Opinion issued January 3, 2008

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00976-CR






HUGO ANDY MARTINEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1048707





MEMORANDUM OPINION


 After the trial court denied the pretrial motions of appellant, Hugo Andy
Martinez, seeking to suppress his statement and seized evidence, appellant pleaded
guilty, without an agreed recommendation by the State, to the felony offense of
possession with intent to deliver a controlled substance, cocaine, weighing at least
400 grams. Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp.
2007), § 481.112(a), (e) (Vernon 2003). Following a sentence investigation, the trial
court found appellant guilty, assessed his punishment at 50 years' confinement in
prison and a $250,000 fine, and later certified appellant's right to appeal. Appellant
presents five points of error, in which he argues that (1) the trial court abused its
discretion by denying appellant's motions to suppress, (2) appellant was denied
effective assistance of counsel, and (3) the trial court abused its discretion by refusing
to hold a hearing on appellant's motion for new trial. We affirm.

Background


 By his judicial confession, appellant pleaded guilty to unlawfully and
knowingly possessing with intent to deliver a controlled substance, cocaine, weighing
at least 400 grams by aggregate weight including any adulterants and dilutants. 
Appellant had been under surveillance pursuant to a tip by an informant and was
stopped for a traffic violation, after which he told officers who had followed him that
he had cocaine in his truck and granted the officers permission to search the truck. 
Appellant was arrested in the driveway of a residence after police discovered cocaine
and a large sum of cash from the truck. After seizure of the cocaine and subsequent
arrest, appellant granted police oral and written consent to search the residence and
handed his keys to an officer to unlock it. Once inside, police found a total of 232.2
kilograms of cocaine in the locations to which appellant had directed them.

 Appellant filed two pretrial motions to suppress. In the first motion, appellant
sought to suppress the written statement he provided to police; the second motion
sought to suppress the cocaine from the residence. The trial court conducted an oral
hearing pretrial to consider both motions, during which three police officers testified
and were cross-examined, and 18 exhibits were admitted. At the conclusion of the
hearing, the trial court denied the motions, thus concluding that there was no reason
to suppress the seized cocaine or appellant's statement.

Hearing on Motion for New Trial


 In his fifth issue, appellant contends that the trial court erred by refusing
appellant's request for an evidentiary hearing on his motion for new trial. Appellant
filed his motion for new trial through newly retained appellate counsel, who verified
the motion and requested a hearing on it. The record reflects that the trial court
initially granted appellant's request for an evidentiary hearing, but later declined to
conduct the hearing because of deficiencies in the motion. Appellant initially
challenged that ruling in this Court by moving to abate the appeal. Having previously
ordered appellant's motion taken with the case, we address this issue first. 

 Article 40.001 of the Code of Criminal Procedure governs motions for new trial
premised on discovery of material evidence favorable to the accused. See Wallace
v. State, 106 S.W.3d 103, 107 (Tex. Crim. App. 2003) (citing Tex. Code Crim. Proc.
Ann. § 40.001 (Vernon 2006). The purpose of the hearing is to develop fully the
issues raised in the motion. Id. at 108; Martinez v. State, 74 S.W.3d 19, 22 (Tex.
Crim. App. 2002); see Tex. R. App. P. 21.2 (stating that motion for new trial required
to preserve error "only when necessary to adduce facts not in the record"). A
defendant does not have an absolute right to an evidentiary hearing on a motion for
new trial. Cooks v. State, __ S.W.3d __, No. PD-0010-06, slip op. at 5, 2007 WL
4146374 * __ (Tex. Crim. App. Nov. 21, 2007) (holding that time for filing motion
for new trial is critical stage during which defendant has a constitutional right to
counsel). To be entitled to a hearing, the motion for new trial and accompanying
affidavit must raise matters that (1) are not determinable from the record and (2)
could entitle the accused to relief. Id. (citing Jordan v. State, 883 S.W.2d 664, 665
(Tex. Crim. App. 1994)); Wallace, 106 S.W.3d at 108 (quoting Reyes v. State, 849
S.W.2d 812, 816 (Tex. Crim. App. 1993)). 

 Appellant's 24-page motion for new trial invoked these standards, citing Reyes,
849 S.W.2d at 816. Appellant's motion challenged denial of his motions to suppress
and also raised claims concerning the effectiveness of trial counsel. Yet, the existing
record contains both appellant's motions to suppress and the reporter's record from
the hearing on those motions. Accordingly, appellant's challenge to the ruling on his
motions to suppress are determinable from the existing record. 

 Appellant's motion for new trial also asserted a claim of ineffectiveness of
counsel. Specifically, appellant claimed, through appellate counsel, that his trial
counsel was ineffective in the following respects: not supporting the motions to
suppress with legal authorities on the issue of effective consent; not informing
appellant of the doctrine of affirmative links, which adversely affected the
voluntariness of appellant's plea; and not calling witnesses, offering mitigating
evidence, or making a "real" plea for leniency during the punishment phase of the
trial. The claim of failure to support the motions to suppress with legal authorities
is determinable in part from the existing record, which contains both the motion and
the reporter's record of the hearing on appellant's motions. Whether trial counsel was
ineffective as appellant claims is usually not determinable from the existing record,
however, and is, therefore, governed by article 40.001 of the Code of Criminal
Procedure. See Guidry v. State, 132 S.W.3d 611, 612 (Tex. App.--Houston [1st
Dist.] 2004, no pet.) (ordering abatement to conduct hearing on motion for new trial
claiming ineffective assistance of counsel based on claim of failure to convey
defendant's acceptance of plea offer). Accordingly, we next address whether a
hearing was required regarding the claim of ineffectiveness of counsel.

A. Prerequisites to Obtaining Article 40.001 Hearing

 The defendant need not establish a prima facie case for a new trial in order to
be entitled to an evidentiary hearing on a motion for new trial; the motion and
supporting affidavit proof need only demonstrate that reasonable grounds exist for
holding that a new trial could be granted. Wallace, 106 S.W.3d at 108 (citing
Martinez v. State, 74 S.W.3d at 22; Guidry, 132 S.W.3d at 612.

 We review the trial court's decision to deny a hearing on an article 40.001
motion for new trial for abuse of discretion. See Wallace, 106 S.W.3d at 108; Guidry,
132 S.W.3d at 612. When a defendant presents a motion for new trial that raises
matters that are not determinable from the record and could entitle the defendant to
relief, a trial court abuses its discretion by failing to conduct a hearing. Wallace, 106
S.W.3d at 108; Martinez, 74 S.W.3d at 21; King v. State, 29 S.W.3d 556, 569 (Tex.
Crim. App. 2000); Guidry, 132 S.W.3d at 612. An affidavit that specifically
demonstrates the truth of the defendant's grounds of attack is thus an absolute
prerequisite to obtaining a hearing. See Wallace, 106 S.W.3d at 108; Martinez, 74
S.W.3d at 21; Guidry, 132 S.W.3d at 612. An affidavit that states only conclusory
allegations without supporting facts fails the showing required and is insufficient to
warrant an evidentiary hearing on the motion for new trial. Cooks, slip op. at 5 (citing
and quoting Jordan, 883 S.W.2d at 665); see also Martinez, 74 S.W.3d at 21 (stating
that affidavit must demonstrate that reasonable grounds for new trial exist and that
alleged grounds are true); Jordan, 883 S.W.2d at 655 (rejecting sufficiency of
conclusory affidavit, unsupported by facts and explanations concerning claim of
ineffective assistance of counsel, to put trial court on notice that reasonable grounds
exist to conduct evidentiary hearing); Vyvial v. State, 10 S.W.2d 83, 84 (Tex. Crim.
App. 1928) (op. on reh'g) (rejecting sufficiency of motion premised on "information
and belief," without specific averment of facts or supporting affidavit, because same
not only unassailable as perjury, but would also force limitless "fishing expeditions"
by reviewing court). The defendant or another person with knowledge may supply the
supporting affidavit for matters that are not apparent from the record. Bearden v.
State, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983); see Vyvial, 10 S.W.2d at 84
(holding that matters constituting hearsay as to accused require affidavit of another
person with knowledge of facts).

B. Appellant's Claims of Ineffectiveness of Counsel


 1. Voluntariness of Plea-Failure to Inform of Affirmative-Links Doctrine


 Through newly retained appellate counsel, appellant claimed in his motion for
new trial that his trial counsel was ineffective because he did not inform appellant
adequately concerning the effect of the doctrine of affirmative links, as that defense
might affect appellant's lack of exclusive possession of the premises where police
seized the 250 kilograms of cocaine. Appellant argued that no affirmative links
connected him to the offense, that trial counsel's failure to inform appellant of the
affirmative-links doctrine adversely affected the voluntariness of his guilty plea, and
that he would not have pleaded guilty had he been aware of the case law. 

 The affidavit offered in support of the motion for new trial is defective because
it lacks evidentiary support. Appellant neither verified the motion for new trial, nor
supported it with an unsworn declaration, as authorized by section 132.001 of the Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 132.001
(Vernon 2005) (authorizing unsworn declarations for inmates). Appellant's appellate
counsel provided the only authentication for the statements through a brief
verification. In addition to stating her name and status as an attorney licensed to
practice law in Texas, counsel's verification recites that she had reviewed the motion
for new trial, and "state[d] under oath that the facts contained therein are true and
correct to the best of [her] knowledge." In Grant v. State, the Texarkana Court of
Appeals rejected an affidavit in similar form signed by counsel on behalf of an
accused and held that the trial court did not abuse its discretion by refusing to conduct
an evidentiary hearing. 172 S.W.3d 98, 101 (Tex. App.--Texarkana 2005, no pet.)
Because counsel's statements were necessarily hearsay with respect to the defendant's
claims that he was coerced into pleading guilty, counsel's sworn statement was
inadmissible hearsay, and the trial court did not err by not holding the requested
hearing on the motion for new trial. See id. (1)

 Just as counsel in Grant could not testify competently that the defendant had
been coerced into entering a guilty plea, id., appellate counsel was not competent here
to testify that trial counsel's alleged failure to inform appellant of the doctrine of
affirmative links adversely affected his decision to plead guilty. Thus lacking any
sworn statement or unsworn declaration by the defendant concerning trial counsel's
ineffectiveness because of his alleged failure to explain the affirmative links doctrine
to appellant and any relationship of that alleged failure to appellant's plea, the motion
for new trial remained effectively unsworn and, thus, noncompliant with the affidavit
requirement. See id. (citing Tex. Civ. Prac. & Rem. Code Ann. § 132.001 (Vernon
2005) (authorizing unsworn declaration by prison inmate in lieu of affidavit); see also
Wallace, 106 S.W.3d at 108; Martinez, 74 S.W.3d at 21; Guidry, 132 S.W.3d at 612
(reiterating affidavit requirement). Accordingly, appellant's motion did not place the
trial court on notice that reasonable grounds for granting appellant's request for an
evidentiary hearing existed. See Jordan, 883 S.W.2d at 665. 

 2. Other Ineffective-Assistance Claims

 Appellant also contended in the motion for new trial that his trial counsel was
ineffective during the punishment phase by not offering witnesses or mitigating
evidence and not making a "real" plea for leniency. In addition to the lack of sworn,
supporting proof addressed above, these claims constitute bare legal conclusions
without additional supporting facts to substantiate the stated failures or explanations
of how any of these alleged failures adversely affected appellant. Compare King, 29
S.W.3d at 569 and Jordan, 883 S.W.2d at 665 (rejecting contentions in motion for
new trial as conclusory) with Guidry, 132 S.W.3d at 612 (holding that claim of
ineffective representation warranted evidentiary hearing because affidavit supporting
motion for new trial explained that counsel's failure to inform prosecutor that
appellant had accepted plea bargain, which resulted in greater punishment than
proposed by State). 

 We hold that appellant's motion for new trial and the supporting verification by
appellate counsel did not entitle appellant to the hearing contemplated by article
40.001 of the Code of Criminal Procedure because they did not place the trial court
on notice that reasonable grounds existed for granting the requested hearing. E.g.,
Jordan, 883 S.W.2d at 665. Therefore, that the trial court did not abuse its discretion
by refusing to conduct a hearing on appellant's motion for new trial.

 We overrule appellant's fifth point of error.

Motions to Suppress


 Appellant's first, second, and third points of error challenge denial of his
motions to suppress. The first and second points of error challenge the trial court's
refusal to suppress the evidence seized from the residence on the grounds that
appellant's written consent to search was neither voluntary nor valid, in violation of 
article 1, section 9 of the Texas Constitution, article 38.23 of the Code of Criminal
Procedure, and the Fourth and Fourteenth Amendments to the United States
Constitution. See Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005); U.S. Const. amend. IV, XIV. 

A. Voluntary Consent or Acquiescence to Police Authority--Waived

 In point of error one, appellant contends that his written consent to search the
residence was not voluntary because he merely acquiesced to the police officer's claim
of lawful authority. See Bumper v. N. Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788,
1791 (1968); Paulus v. State, 633 S.W.2d 827, 850 (Tex. Crim. App. 1981). In
support of that contention, appellant interprets the record as demonstrating a conflict
between the testimony of the officers, who claimed that no more than ten minutes
passed between appellant's detentions and his signing the consent to search the
residence, and other evidence in the record that shows a gap of six hours between
initial detention and his signing the consent form. (2) Appellant argues that this conflict
casts "serious doubt" on both the officers' testimony and the voluntariness of
appellant's consent. Appellant also directs us to the following handwritten addition
to the consent to search form: "Narcessa Martinez (appellant's wife) will not be
arrested during this [search]." Appellant contends that the addition suggests either
that appellant's consent was coerced or that appellant believed he was promised
impunity for his wife if he consented to the search. 

 Appellant did not preserve either contention in the trial court, where his motion
to suppress, as well as his motion for new trial, focused on appellant's lack of
authority to consent to the search of the residence, which another person actually
owned, and the alleged failure of the officers at the scene to inform appellant that he
could refuse to consent. 

 Well-settled law recognizes that virtually every right, whether constitutional or
statutory, may be waived by failing to object. Smith v. State, 721 S.W.2d 844, 855
(Tex. Crim. App. 1986); Solis v. State, 945 S.W.2d 300, 301 (Tex. App.--Houston 
[1st Dist.] 1997, pet. ref'd). To preserve error for appellate review, an appellant must
object timely, with reasonable specificity, and obtain an adverse ruling. Tex. R. App.
P. 33.1(a); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); Steadman
v. State, 31 S.W.3d 738, 742 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd). An
appellant has not preserved error when the complaint on appeal does not comport with
the objection made to the trial court, Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim.
App. 2002), or expands beyond a narrow ground presented to the trial court. See
Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). Error is not preserved
under either alternative because the trial court had no opportunity to rule on the
grounds presented on appeal, as rule 33.1(a)(2) requires. 

 Because appellant did not present to the trial court the same contentions that he
presents in his first point of error to this Court, the trial court had no opportunity to
rule on those contentions, as required by rule 33.1(a)(2). Having thus failed to
preserve error by raising his challenges for the first time on appeal, appellant has
waived error. See Wilson, 71 S.W.3d at 349; Swain, 181 S.W.3d at 365.

 We overrule appellant's first point of error.

B. Authority to Consent

 In his second point of error, appellant contends that the trial court erred by
denying his motion to suppress the cocaine the officers seized from the residence on
the grounds that appellant had neither actual nor apparent authority to consent to the
search because another person owned the residence. The State responds that appellant
waived any error because his contentions were not before the trial court during the
hearing on the motion to suppress. Though appellant's argument was not before the
trial court at the hearing on the motion to suppress, appellant's motion for new trial
included a challenge to his actual or apparent authority to consent to the search of the
residence. The trial court did not rule expressly on the motion for new trial, which
was overruled as a matter of law, but the motion nonetheless afforded the trial court
an opportunity to rule on the merits of appellant's challenge and, therefore, preserved
the complaint for appeal. See Tex. R. App. P. 33.1(b).

 1. Standard of Review

 Under the bifurcated standard of review that controls rulings on a motion to
suppress, we defer almost totally to the trial court's determination of historical facts,
and we review the court's application of the law de novo. See Dyar v. State, 125
S.W.3d 460, 462 (Tex. Crim. App. 2003); Brown v. State, 212 S.W.3d 851, 866 (Tex.
App.--Houston [1st Dist.] 2006, pet. denied). The trial court is the trier of fact at a
hearing on a motion to suppress and alone determines the credibility of witnesses and
the weight, if any, to accord their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); Brown, 212 S.W.3d at 866-67. Accordingly, the trial court may
believe or disbelieve all or any part of a witness's testimony, even if that testimony is
not controverted. Ross, 32 S.W.3d at 855; Brown, 212 S.W.3d at 867. When, as here,
the trial court files no findings of fact, we view the evidence in the light that most
favors the trial court's ruling, and we will uphold the ruling on any theory of law
supported by the evidence. Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Brown, 212 S.W.3d at 867.

 2. Standing

 We first address the State's contention that appellant lacks standing to assert
that he lacked actual or apparent authority to consent to the search of the residence
because the residence was not appellant's residence. An accused has standing to
contest a search under the Fourth Amendment provided he has a legitimate expectation
of privacy in the place searched. Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421,
430 (1978); Granados v. State, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002);
Brown, 212 S.W.3d at 867. It is the defendant's burden to establish that he had a
subjective expectation of privacy that society recognizes as reasonable in the place
searched. Granados, 85 S.W.3d at 223; Brown, 212 S.W.3d at 867. (3) 

 In this case, appellant had keys to the residence on his keychain and gave them
to an officer at the residence, who then unlocked the residence and entered it with
other officers after appellant signed a written consent. Once inside, appellant, who
was on crutches, remained in the kitchen area of the residence, from which he directed
the officers conducting the search to areas all over the house, where they recovered
cocaine and kilo wrappers. The search progressed by appellant's indicating an area
for the officers to search, the officers' recovering either cocaine or kilo wrappers in
that area, and then returning to appellant to ask whether any more drugs existed and
where they were located. Appellant directed the officers to a specific shelf in a
bedroom, a specific dresser drawer of another bedroom, a specific oatmeal bag in the
pantry area of the kitchen, the attic crawl space of a bedroom, as well as the garage. 
Appellant instructed the officers how to access the attic--by using a ladder in the
garage that was resting on large duffel bags containing the largest amounts of
cocaine--and described those bags as well, and also told the officers that the owner
of the house did not know that appellant was storing controlled substances there. 
These circumstances, including the circumstances that the contraband was hidden and
not in plain view in any of the areas to which appellant directed the officers, warrant
the trial court's implied conclusion that appellant had a reasonable expectation of
privacy in the searched premises. See Granados, 85 S.W.3d at 223; Brown, 212
S.W.3d at 867. Accordingly, we conclude that appellant has standing to challenge
whether he consented to the search. 

 3. Validity--Whether Officers Reasonably Relied on Appellant's Consent (4)

 It is undisputed that police conducted a warrantless search of the residence, but
also undisputed that appellant signed a written consent authorizing the search. Consent
is a well-established exception to the warrant requirement. Miller v. State, 208 S.W.3d
554, 559 (Tex. App.--Austin 2006, pet. ref'd) (citing Schneckloth v. Bustamonte, 412
U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973)); Reasor v. State, 12 S.W.3d 813, 817
(Tex. Crim. App. 2000). An individual whose premises or property is searched may
consent, but an individual who has common authority over and authority to use the
premises or property may also consent. Illinois v. Rodriguez, 497 U.S. 177, 179-81,
110 S. Ct. 2793, 2797 (1990) (citing United States v. Matlock, 415 U.S. 164, 171, 94
S. Ct. 988, 993 (1974)); Whisenhunt v. State, 122 S.W.3d 295, 298 (Tex.
App.--Houston [1st Dist.] 2003, pet. ref'd); Brown, 212 S.W.2d at 868; see also Jones
v. State, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003) (stating that third person who
has "equal control and equal use of property searched" may validly consent). 

 To be constitutionally valid, consent must be voluntary. See Rayford v. State,
125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (citing Schneckloth, 412 U.S. at 219-23,
93 S. Ct. at 2041); see also Brimage v. State 918 S.W.2d 466, 480-82 (Tex. Crim. App.
1994) ("When the State has secured the voluntary consent to a warrantless search, such
a search violates neither the United States or Texas constitutions, nor the laws of this
state.") (citing Matlock, 415 U.S. 164, 94 S. Ct. 988 (1974); Becknell v. State, 720
S.W.2d 526 (Tex. Crim. App. 1986); Sharp v. State, 707 S.W.2d 611 (Tex. Crim. App.
1986)). The validity of a consent to search is a question of fact and is determined from
all the circumstances. Rayford, 125 S.W.3d at 528 (citing Ohio v. Robinette, 519 U.S.
33, 40, 117 S. Ct. 417, 421 (1996)); Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim.
App. 2002). Federal constitution law demands that the State prove the validity of
consent by a preponderance of the evidence, and the Texas Constitution requires the
State to establish validity of consent by clear and convincing evidence. Rayford, 125
S.W.3d at 528; Maxwell, 73 S.W.3d at 281. 

 An individual's authority to consent to search another's premises or property
derives from the Supreme Court's recognition that several persons may have joint
access or control over a property for most purposes and thus may use the property
sufficiently mutually that it is reasonable to recognize that a cohabitant has the right to
permit the inspection in his own right. See Maxwell, 73 S.W.3d at 282; see Matlock,
415 U.S. at 171 n.7, 94 S. Ct. at 993 n.7. Accordingly, a person who has common
authority over a premises has the same authority to consent as another with whom the
person shares the premises. See Maxwell, 73 S.W.3d at 281-82; Brown, 212 S.W.3d
at 868 (citing Matlock, 415 U.S. at 171, 94 S. Ct. at 993). "Common authority,"
therefore, "derives from the mutual use of the property, not the ownership or lack
thereof." Jones, 119 S.W.3d at 787; see Maxwell, 73 S.W.3d at 281.

 In Whisenhunt, this Court concluded that an officer acted reasonably in searching
an accused's bedroom, having been led to the room by a person "who appeared to have
authority to consent to the search." 122 S.W.3d at 301. We relied on Illinois v.
Rodriguez, in which officers had been granted access inside an apartment by a woman
who represented that the apartment was "our[s]" and that she had clothes and furniture
there. 497 U.S. at 179, 110 S. Ct. at 2797. Though the woman unlocked the apartment
with her key and gave officers permission to enter, she had no actual authority to
consent to the officer's entry because she had moved and was not living there. Id. at
180. Noting that the record did not clearly establish whether the woman told the
officers that she currently lived at the apartment or that she had merely lived there once,
the Supreme Court ruled that searches could be valid under the apparent authority
rationale. Id. at 188, 110 S. Ct. at 2801. The court instructed, "Whether the basis for
such authority exists is the sort of recurring factual question to which law enforcement
officials must be expected to apply their judgment; and all the Fourth Amendment
requires is that they answer it reasonably." Id. at 186, 110 S. Ct. at 2800. Because
many situations that confront officers in the course of executing their duties "are more
or less ambiguous, room must be allowed for some mistakes on their part," though
mistakes must be "reasonable" and result from "acting on facts leading sensibly to . .
. conclusions of probability." Id. (citing Brinegar v. United States, 338 U.S. 160, 176,
69 S. Ct. 1302, 1311 (1949)). 

 More recently, in Georgia v. Randolph, the Supreme Court reiterated that the
"constant element in assessing Fourth Amendment reasonableness in the consent cases
. . . is the great significance given to widely shared social expectations . . . ," and that
Matlock "stands for the proposition that the reasonableness of such a search is in
significant part a function of commonly held understanding about the authority that
co-inhabitants may exercise in ways that affect each other's interest" so that "shared
tenancy is understood to include an 'assumption of risk,' on which police officers are
entitled to rely." 547 U.S. 103, 111, 126 S. Ct. 1515, 1521-22 (2006). Accordingly,
Matlock imposed no burden on police "to eliminate the possibility of atypical
arrangements" when there is no "reason to doubt that the regular scheme was in place." 
Randolph, 547 U.S. at 112, 126 S. Ct. at 1522. 

 Viewing the totality of the circumstances of this case in the light that most favors
the trial court's ruling, we begin with the consent form that appellant signed, which
appellant executed after he was arrested based on the cocaine and large amount of cash
recovered from his truck. When asked whether additional drugs were inside the
residence, appellant replied "yes" and consented orally to a search of the residence. 
The officers then waited about ten minutes for another officer to arrive with the consent
form. 

 Before signing the form, appellant received his statutory warnings twice and
indicated that he understood them. Appellant also read the consent form, which
includes the recital that he had a right to refuse consent and that no promises, threats,
or physical or mental coercion had been used to gain either his consent or his signature
on the form. Appellant read and understood English well. No guns had been drawn,
and appellant was cooperative. The officers were attentive to appellant's physical
limitations because his leg was injured, and he had to use crutches. The officers and
appellant were the only people present at the residence, and two officers were present
when appellant signed the consent form. 

 Though no friends or family members were under investigation, and the officers
had no knowledge of appellant's wife or family, appellant indicated to the officers that
he wanted to take ownership of any contraband recovered and did not want his wife to
go to jail. In addition, appellant informed the officers that the actual owner of the
residence did not know that appellant was storing drugs there. 

 Appellant gave his keychain to police officers, who used one of the keys to
unlock and enter the residence. When one of the officers was asked under cross-examination what led him to believe that the residence was appellant's, he responded
that appellant had keys to the residence, which led the officers to believe that appellant
"might have control of the residence"; that appellant "told us he had cocaine there," and
that he "believe[d appellant] knew what was in that location." Once inside, appellant
remained in the kitchen, because of his injury, but was nonetheless able to direct the
officers specifically to multiple areas where cocaine had been hidden, as addressed
above. 

 Appellant contends, however, that the totality of the circumstances demonstrates
that no person could reasonably believe that appellant validly consented to the search
of the residence. Appellant emphasizes that an officer conceded that he discovered
during the search that the house was the residence of another person, and that the
officer could not identify, from photographs presented to him at trial, whether the
cocaine discovered from a bedroom was in appellant's bedroom or a bedroom that
someone else used. From this, appellant infers that no items, personal to appellant,
were identified in the house. Appellant also emphasizes that the officers had no
advance information about the residence as it related to appellant. We disagree.

 Though the officer could not identify which bedroom was appellant's from a
photograph introduced into evidence and there was no testimony concerning personal
effects like clothing, these circumstances alone are insufficient to show that appellant
lacked authority, in light of other evidence that affirmatively connects appellant to the
house. Appellant referred voluntarily to both his wife and the actual owner of the
property in reference to the house, but stated that the owner did not know about the
cocaine and that his wife was not involved in the possession and should not be arrested. 
Both statements, however, connected appellant to the house, to which appellant had
keys. On reviewing the record under the controlling standard, we conclude that the
State presented clear and convincing evidence, and thus a preponderance of the
evidence, that appellant validly consented to a search of the residence and, therefore,
that the officers at the scene acted reasonably in relying on appellant's consent. 

 Except for narrow exceptions that do not apply here, settled law recognizes that
lack of legal ownership of a residence is a nondispositive inquiry in consent-to-search
cases. See Jones, 119 S.W.3d at 787; Maxwell, 73 S.W.3d at 282 & n.3 (recognizing
exceptions for cases involving landlord and tenant and hotel and guest). Appellant's
command over the residence, to the extent that he was able to describe specific places,
specific directions to those places, and even specific containers--like the oatmeal bag
in the pantry and the box in the attic crawl space--and to tell the officers where items
like the ladder he recommended to access the attic crawl space was stored, constituted
clear and convincing evidence that appellant had control and authority over the
residence based on his unequivocal use of it and command over it. Learning that
another person actually owned the house did not diminish that showing except to
demonstrate that appellant's control, authority, use, and command over the house were
mutual with the owner and were shared with the owner. See and compare Brimage,
918 S.W.2d at 480-82 (rejecting validity of consent based on consenter's
representations that cast doubt on consenter's ownership) with Maxwell, 73 S.W.3d at
282 (upholding validity of consent because officer could reasonably have believed that
driver had mutual control with defendant over rig, despite defendant's ownership). 

 We hold that the facts available to the officers in this case would warrant a
person of reasonable caution to believe that appellant used and had authority and
control over the residence where officers seized the contraband and, therefore, that the
trial court did not abuse its discretion by overruling appellant's motion to suppress the
cocaine. 

 We overrule appellant's second point of error.

C. Appellant's Statement

 Appellant's third point of error challenges denial of his motion to suppress his 
written statement. Appellant contends that the statement should have been suppressed
as the "fruit of the poisonous tree," specifically, the wrongful conduct of the officers
at the scene. Appellant waived this point by failing to preserve it in the trial court. See
Tex. R. App. P. 33.1(a); Turner, 805 S.W.2d at 431; Steadman, 31 S.W.3d at 742.

 We overrule appellant's third point of error.

Ineffective Assistance of Counsel


 In his fourth point of error, appellant contends that his trial counsel was
ineffective. Appellants claims that counsel did not inform him of the law of affirmative
links, did not provide legal authorities to the trial court in support of the motion to
suppress, and did not call witnesses, offer mitigating evidence, or make a "real" plea
for leniency at the punishment hearing conducted on the presentence-investigation
report (PSI). 

 To prevail on his claim of ineffective assistance of counsel, appellant must meet
the standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Appellant must first demonstrate that his trial counsel's representation
fell below an objective standard of reasonableness under prevailing professional norms. 
See id. at 688, 104 S. Ct. at 2064-65; Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second,
appellant must establish that his counsel's performance was so deficient that it
prejudiced his defense. See Howland v. State, 966 S.W.2d 98, 104 (Tex.
App.--Houston [1st Dist.] 1998), aff'd on other grounds, 990 S.W.2d 274 (Tex. Crim.
App. 1999). Thus, appellant must show a reasonable probability that, but for his
counsel's unprofessional errors, the result of the proceeding would have been different. 
See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Howland, 966 S.W.2d at 104. 
Appellant has the burden to establish both prongs of the Strickland test by a
preponderance of the evidence. See Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim.
App. 1998). Because there is a strong presumption that trial counsel's conduct fell
within the wide range of reasonable professional assistance, appellant must overcome
the presumption that counsel's action or inaction might be considered "sound trial
strategy" under the circumstances. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065;
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.). 
Any allegation of ineffectiveness must be firmly founded in the record, which must
demonstrate affirmatively the alleged ineffectiveness. Thompson, 9 S.W.3d at 813. 
The record on direct appeal, therefore, will not normally be sufficient to demonstrate
a preponderance of evidence that an attorney's representation was so deficient and so
lacking in tactical or strategic decision-making that an appellant will succeed in
overcoming the presumption that representation was reasonably professional. See Bone
v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When the record is silent
regarding counsel's reasoning or strategy, we may not speculate to find trial counsel
ineffective. Gamble, 916 S.W.2d at 93. 

 Though appellant filed a motion for new trial and requested a hearing on the
motion, in part to substantiate the claims of ineffectiveness of trial counsel, we held
above that the appellant's appellate counsel's motion lacked the evidentiary support
required by article 40.001 of the Code of Criminal Procedure to entitle appellant to an
evidentiary hearing. Accordingly, there is no record on which we might rely to
substantiate and assess either trial counsel's strategy or his reasons for acting or not
acting as appellant contends he should have. Under the circumstances, we may not
speculate concerning either. See Thompson, 9 S.W.3d at 814; Gamble, 916 S.W.2d at
93. 

 We cannot say that appellant's criticism of the motion to suppress because of 
lack of substantive authority is sufficient to show that counsel's performance fell below
an objective standard of reasonableness, to the degree that appellant can overcome the
presumption that the motion constituted effective representation. Counsel cited the
controlling provisions of the Texas and federal constitutions and the Code of Criminal
Procedure that supported his constitutional challenges and presented several
challenges, including many preserved by that motion and presented on appeal. The
hearing on the motion further reflects vigorous cross-examination by which trial
counsel scrutinized each police officer's version of the sequence and timing of events,
particularly concerning appellant's consents to search both his vehicle and the
residence. Concerning appellant's criticism of trial counsel for not calling witnesses
at the punishment hearing, the record shows that counsel presented several character
letters on appellant's behalf. Similarly, counsel's closing argument at punishment
strongly recommended lesser punishment by emphasizing that appellant cooperated
with police, had a good work history, an insignificant criminal history, was young and
had family support, as well as family obligations, but was also disabled by his leg
injury. 

 We hold that appellant has not met his burden to show, by a preponderance of
the evidence, that his trial counsel's performance was deficient. Having thus not
satisfied the first prong of the Strickland test, appellant has not overcome the
presumption that his trial counsel provided reasonably effective representation.

 We overrule appellant's fourth point of error, and we deny all pending motions. 
Conclusion


 We affirm the judgment of the trial court.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. The defendant in Grant had provided his own statement in support of the motion for
new trial, but it was neither a sworn affidavit nor an unsworn declaration. See Grant
v. State, 172 S.W.3d 98, 101 (Tex. App.--Texarkana 2005, no pet.) (citing Tex. Civ.
Prac. & Rem. Code Ann. § 132.001).
2. The State explains in its brief that the 6-hour lapse is from 2 p.m., when the officers
received their tip. Rolling surveillance of appellant did not occur until four or five
hours later, when officers observed the first hand-to-hand transfer from appellant's
truck.
3. Several factors are relevant to determining whether a given claim of privacy is
objectively reasonable, including whether the accused (1) had a property or
possessory interest in the place invaded, (2) was legitimately in the place invaded, (3)
had complete dominion or control and the right to exclude others, (4) took normal
precautions customarily taken by those seeking privacy before the intrusion, or (5) put
the place to some private use, and lastly (6) whether the accused's claim of privacy
is consistent with historical notions of privacy. See Brown v. State, 212 S.W.3d 851,
867 (Tex. App.--Houston [1st Dist.] 2006, pet. denied) (citing Granados v. State, 85
S.W.3d 217, 222-23 (Tex. Crim. App. 2002)). This list of factors is non-exhaustive,
and no single factor is dispositive of a legitimate expectation of privacy. Id. 
4. We note that this case differs from many involving consent by third parties, in that
here the consenting third party contends that his own consent was invalid, rather than
the consent given by another. See e.g., Maxwell v. State, 73 S.W.3d 278, 280 (Tex.
Crim. App. 2002) (involving driver who consented to search of defendant's truck
trailer).